UNITED STATES (ALLEN v.). See Case No. 240.

UNITED STATES v. ALLEN. See Case No. 14,820.

UNITED STATES v. The ALLIANCE. See Case No. 245.

UNITED STATES v. ALL THE DISTILLED SPIRITS, ETC., AT 307–9 AVE. A, NEW YORK. See Case No. 3,923.

## Case No. 14,433.

### UNITED STATES v. ALMEIDA.

[2 Whart. Prec. Ind. § 1061, note: 4 Leg. Int. No. 5.]

District Court, E. D. Pennsylvania. Feb., 1847.

CRIMINAL LAW—INDICTMENT—CERTAINTY.

[An indictment against several defendants, which charges that on a certain day they, being seamen of an American vessel named, "with force and arms, did then and there· feloniously make a revolt on board the said ship, contrary," etc., fails to charge with sufficient certainty an offence under the act of congress of 1835 (4 Stat. 775), providing that if any one or more of the crew of an American vessel shall, with force, or by fraud, threats, or other intimidations, usurp the command of such ship from the master, or deprive him of his authority and command, or resist or prevent him in the free exercise thereof, or transfer such authority and command to any other person, the person so offending, and his aiders or abettors, shall be deemed guilty of a revolt or mutiny, and shall be fined and imprisoned according to the nature and aggravation of the offence.]

KANE, District Judge. The indictment on which these prisoners were convicted a few days ago charges that on the first day of November, last, upon the high seas, &c., they, being "seamen of an American vessel, to wit, the barque Pons, with force and arms, did then and there feloniously make a revolt on board the said ship, contrary," &c. A motion has been made in arrest of judgment, on the ground that the offence is not set forth in the indictment with adequate certainty; and it has been contended that, under the acts of congress now in force, it was incumbent on the prosecution to set out more specifically the acts which make up the offence charged. The question presented by the record is more interesting than difficult; but as it appears to be of the first impression, it properly invites an exposition of the views of the court in deciding it.

The law secures to every man who is brought to trial on a charge of crime, that the acts which constitute his alleged guilt shall be set forth with reasonable certainty in the indictment which he is called upon to plead to. This is his personal right—indispensable, to enable him to traverse the facts, if he believe them to be untruly charged; to deny their asserted legal bearing, if in his judgment they do not establish the crime imputed to him; or to admit at once the facts and the conclusions from them, if he be conscious of guilt. It is important to his protection, also, in case he should be a second time charged for the same offence, that there should be no uncertainty as to that for which he was tried before. And besides all this, which may be supposed to regard the accused alone, it is necessary for the proper action and justification of the court, that it should clearly appear from facts patent on the record, that a specific, legally defined crime has been committed, for which sentence is to be awarded according to the laws that apply to it. There are exceptions, or rather limits to the application of this principle; but they all refer themselves to the peculiar character of the offence charged. Thus, an indictment against a "common barrator," or for "keeping a common gaming-house," or "a house of ill-fame," is good without a specification of acts; for the essence of the offence in these cases is habitual character. So, also, where the charge is not

the absolute perpetration of an offence, but its primary characteristic lies in the intent, instigation, or motion of the party towards its perpetration; the acts of the accused, important only as developing the mala mens, and not constituting of themselves the crime, need not be spread upon the record. Such are certain cases of conspiracy, and those of attempt or solicitation to commit a known crime; where the mental purpose may not have been matured into effective action, or has had reference to criminal action by a third party,—a class of exceptions, this last, which vindicates much of the judicial action under this statute. But these are only exceptions: the principle is as broad as the common law. It is not enough, and never has been, to charge against the party a mere legal conclusion, as justly inferential from the facts that are not themselves disclosed on the record. You may not charge treason, murder, or piracy, in round, general phrases. You must set out the act which constitutes it in the particular case. Following out the principle, it has always been held that where various acts have been enumerated in a statute, as included in the same category of crime, and to be punished alike, it is not enough to charge the violation of such a statute in disjunctive or alternative terms. That is to say, you may not charge its violation to have been in this or that or another particular, leaving the defendant uncertain which or how many of the enumerated particulars he is to answer to. He is entitled to precise notice of the accusation against him.

All these are long recognized rules of the criminal law framed for the protection of innocence, and not unfrequently essential to its safety. The court has no right to disregard them, if it would; on the contrary, it is called upon, by the highest duty that man can owe his fellow, to see to it that they lose none of that efficiency for good which is due to the uniformity and certainty of their application. The defendants have asserted of record, that in their case these rules of pleading have not been conformed to, that they have not had such notice of the offence charged against them as the law requires, and that there is not now within the judicial knowledge of the court that precise and specific assurance of their guilt, which can warrant us in pronouncing sentence upon this verdict. If it be so, they are not too late in bringing the fact to our notice.

The indictment, it is understood, is in accordance with the precedents under the crimes act of 1790 [1 Stat. 112]. By the 8th section of that act it was enacted, that if any seaman shall lay violent hands on his commander, thereby to hinder him from defending his ship, or the goods committed to his trust, "or shall make a revolt in the ship, he shall be adjudged to be a pirate and a felon"; and by the 12th section it was enacted, that if any seaman shall confine the master of any ship or vessel, or "endeavor to make a revolt" in such ship, he shall on conviction suffer imprisonment and fine. Almost all the indictments that have been framed under this act for offences similar to the present, have charged the offence in the words of the 12th section, for "endeavoring to make a revolt." U. S. v. Bladen [Case No. 14,606]; U. S. v. Smith [Id. 16,344]; U. S. v. Smith [Id. 16,345]; U. S. v. Kelly [Id. 15,516]; U. S. v. Smith [Id. 16,337]; U. S. v. Hamilton [Id. 15,291]; U. S. v. Keefe [Id. 15,509]; U. S. v. Hemmer [Id. 15,345]; U. S. v. Haines [Id. 15,275]; U. S. v. Gardner [Id. 15,188]; U. S. v. Barker [Id. 14,516]; U. S. v. Savage [Id. 16,225]; U. S. v. Thompson [Id. 16,492]; U. S. v. Morrison [Id. 15,818]; U. S. v. Ashton [Id. 14,470]; U. S. v. Cassedy [Id. 14,745]; U. S. v. Rogers [Id. 16,189]. Now, as we have already remarked, a charge for such an offence as was the subject of all these cases, resting merely in the endeavor, not going to the perfected act, was, according to all the authorities, well laid in the succinct descriptive words of the section; and in the only cases under the 8th section, in which the principal offence of making a revolt was charged—U. S. v. Sharp [Cases Nos. 16,264 and 16,265] and U. S. v. Haskell [Id. 15,321]—the indictment was quashed or the judgment arrested on other grounds, or else the acquittal of the prisoner made it unnecessary to discuss the question which is now before us. No sentence has ever been pronounced on such a conviction. Indeed, the courts before whom the cases were tried on indictments like this, though the particular question was not raised upon the pleadings, felt themselves embarrassed by the undefined phraseology of the act of congress, and Judge Washington more than once recommended to the jury not to find the defendant guilty of either making or endeavoring to make a revolt, however strong the evidence might be. See U. S. v. Sharp, and U. S. v. Bladen, ut supra. The question of the meaning of these terms was at last submitted to the supreme court of the United States, in a case that went up on a certificate of division from this circuit (U. S. v. Kelly, ut supra, and 11 Wheat. [24 U. S.] 417), and in the spring of 1826 the import of the act of congress of 1790 was judicially determined. In 1835 [4 Stat. 775], however, a new act of congress was passed, which, obviously referring to the language of the supreme court in Kelly's Case, yet not adopting it, proceeded to declare what violations of law should thereafter be deemed to constitute the crime of revolt. The language of the first section of this act is as follows: "If any one or more of the crew of any American ship or vessel on the high seas, or on other waters within the admiralty or maritime jurisdiction of the United States, shall unlawfully, wilfully, and with force, or by fraud, threats, or other intimidations, usurp the command of such ship or vessel from the master, or other lawful commanding officer thereof, or deprive him of his authority and

-command on board thereof, or resist or prevent him in the free and lawful exercise thereof, or transfer such authority and command to any other person not lawfully entitled thereto, every such person so offending, his aiders or abettors, shall be deemed guilty of a revolt or mutiny and felony; and shall, on conviction thereof, be punished by fine not exceeding two thousand dollars, and by imprisonment and confinement to hard labor not exceeding ten years according to the nature and aggravation of the offence."

The unlawful acts, which now fall within the definition of a maritime revolt, are distributed by the language of this section into four categories or classes: (1) Simple resistance to the exercise of the captain's authority; (2) the deposition of the captain from his command; (3) the transfer of the captain's power to a third person; (4) the usurpation of the captain's power by the party accused. It is impossible to analyze the section as I have done, without remarking that the offences which it includes, however similar in character, differ widely in degree. The simple act of unpremeditated resistance to the captain cannot be identified with his formal degradation from the command, still less with the usurpation of his station, without overlooking the gradations of crime, and confounding the accidental turbulence of a heated sailor with the deliberate and daring triumphant conspiracy of mutineers. This indictment, however, makes no reference to these statutory distinctions. It pursues the precedents in use before the act, and charges all the prisoners, simply and alike, with "making a revolt"; and in this, we are told, it conforms to other indictments which have been framed by different attorneys for the United States since the act was passed. But is there in this such a clear and specific description of the offence of each of these men as the rules of criminal pleading prescribe, and the language of the act has made easily practicable? Is it more than a charge in the alternative or disjunctive, when the terms in which the charge is made must be resolved into alternative or disjunctive propositions in order to be understood? Does this court see, on inspecting the record of this conviction, and will other courts, who may hereafter refer to it for a precedent, see here that clear reference to the grades of guilt recognized by the act of congress, which should explain the difference properly to be made in the sentences of the prisoners?

The circumstances of the case, as they are known to the judge who presided at the trial, illustrate the force of this last question. Among the prisoners is a principal officer of the ship, who according to the evidence upon which the jury convicted him, was the moving spirit and principal actor of the revolt, who struck the captain to the deck with a deadly weapon, imprisoned him, bound, in a darkened state room, with a sentry at the door, while he himself usurped the command of the ship, continuing to exercise it till he was within two hours' travel of the city. Another prisoner is a simple seaman, whose offence consisted in omitting to interfere for the captain's rescue, rather than in any more direct agency against him. Had the several categories of crime which the 8th section indicates formed the subjects of charge in as many counts of the indictment, is it not altogether possible that, upon the same evidence, one of these would now stand convicted on several charges, the other on but one, and that the lightest on the list? But this is illustration merely: the argument is independent of it. The party accused is entitled to the most clear specification of his offence that its character and circumstances reasonably admit of; and it cannot be said that he has had this, when a more direct description is furnished in the very words of the act under which he is indicted. The judgment, therefore, must be arrested.

In thus deciding upon the insufficiency of the indictment, the court is not insensible to the consideration that perhaps very little of essential wrong might have been sustained by either of the prisoners if we could lawfully have proceeded to the sentence. The facts cannot be more faithfully examined, nor the merits of the case more ably developed in argument, nor, as it seems to us, more candidly and intelligently apprehended by the jury, than they were in the protracted and laborious trial which recently closed. But we have no right to consider policy, at best probably, in reference to a single case, when we are called on to apply the general principles of established law, and to register a precedent for the future action of the court. We perform a single and unmixed duty, when we declare, upon the call of the accused, what are their legal rights.